UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

PAMELA CORCORAN,

                Plaintiff,

    v.

BOSTON SCIENTIFIC,

                Defendant.

**DECISION AND ORDER**
20-CV-603S

## I.    Introduction

This is an employment action where Plaintiff, Pamela Corcoran, alleges her former employer, Boston Scientific, violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17 ("Title VII"), for sex discrimination and retaliation; the Americans with Disabilities Act, 42 U.S.C. § 121132 ("ADA"), for disability discrimination and retaliation; and the Equal Pay Act, 29 U.S.C. § 206(d).  Plaintiff claims Defendant reassigned her from a lucrative sales region due to her sex and in retaliation for her past complaints, reducing her salary as a result.

Presently before this Court is Defendant's Motion to Dismiss or alternatively for Summary Judgment (Docket No. 5).  As a Summary Judgment Motion, Boston Scientific argues Plaintiff's claims are time barred while contending in its Motion to Dismiss that Plaintiff generally fails to state a claim.

For the reasons stated below, Defendant's Motion (Docket No. 5) is converted into a Motion for Partial Summary Judgment.  As such, that Motion is granted in part and the claims deemed untimely herein are dismissed.  Plaintiff's Title VII discrimination and retaliation claims for alleged events before January 7, 2019, are time barred.  All her ADA

discrimination and retaliation claims before that date also are barred.  Plaintiff's Equal Pay claims for paychecks from May 21, 2018, are timely, but claims before this date are time barred.

 Defendant's alternative Motion to Dismiss (id.) the remaining timely claims is granted in part (dismissing her Equal Pay Act claims) and denied in part (allowing her sex discrimination and retaliation claims under Title VII to proceed).

Following adjudication of this Motion, the remaining claims of sex discrimination and retaliation under Title VII arising after January 7, 2019, in the Complaint are discernable without requiring amended pleading.  Defendant thus shall have fourteen (14) days from entry of this Decision and Order to file an Answer to these surviving claims and the case will be referred to a Magistrate Judge for further pretrial proceedings.

## II.   Background

### A.  Facts

The facts in this record are not contested and the parties' versions are consistent (see Docket No. 1, Compl.; Docket No. 5, Def.'s Statement of Material Facts).  Given this consistency and absent objection, this Court will cite to the Complaint (Docket No. 1), Defendant's Statement of Material Facts (Docket No. 5), and, where applicable for the Motion for Partial Summary Judgment, Defendant's uncontested sworn statements submitted in support of its Motion (Docket No. 5).

Defendant employed Plaintiff as a business partner in the northeastern region of Defendant's Interventional Cardiology division (Docket No. 1, Compl., First Cause of Action, Additional Evidence of Sex Discrimination ¶ 16; Docket No. 5, Def. Atty. Decl. Ex. A (Plaintiff's Attorney's letter, Mar. 20, 2019)).  She later developed a stress-induced

disability (Docket No. 1, Compl. at 2, Factual Background, ¶ 10).  Plaintiff remained with Defendant until she resigned sometime in August 2019 (Docket No. 5, Def. Statement ¶ 1; Docket No. 5, Prust Decl. ¶ 7).  Defendant termed her resignation voluntary (Docket No. 5, Def. Statement ¶ 1; Docket No. 5, Prust Decl. ¶ 7).

During her tenure, Defendant tied Plaintiff's salary to revenue generated from her assigned sales region.  Her assigned region generated $22 million in annual revenue, earning Plaintiff an annual salary of $375,000.  (Docket No. 1, Compl. at 3, First Cause of Action, Element 2, ¶¶ 3, 4; see Docket No. 5, Def. Statement ¶ 6.)

Plaintiff was the only female business partner in her assigned region.  She also observed that, in 2017, only five of 38 Defendant's business partners were women, but, in 2018-19, seven of 56 partners were women.  (Docket No. 1, Compl., First Cause of Action, at 4-5, Additional Evidence of Sex Discrimination ¶¶ 16-18.)

After Plaintiff complained about being discriminated against, she alleges that Defendant assigned her to a different sales territory (Docket No. 5, Def. Statement ¶¶ 2-6).  The new territory generated only $11 million in annual revenue (id. ¶¶ 4, 6; Docket No. 1, Compl., First Cause of Action at 4, Element 2, ¶ 5).  Plaintiff's reassignment reduced her salary to approximately $250,000 per year (Docket No. 1, Compl., First Cause of Action, at 4, Element 2, ¶ 6).  Meanwhile, Defendant allegedly compensated her male replacement with an annual salary greater than $375,000, more than she earned (id., First Cause of Action, at 4-5, Additional Evidence of Sex Discrimination, ¶¶ 19-20, First Cause of Action, at 4, Element 2, ¶ 7).

Defendant contends that Plaintiff's reassignment was part of a company-wide realignment and Plaintiff's new territory annually generated $13 million (Docket No. 5,

Def. Statement ¶ 6).  Defendant denies Plaintiff's sales quota dropped below $6 million, contrary to her allegations (id. ¶ 11; Docket No. 5, Prust Decl. ¶ 6; see Docket No. 5, Def. Memo. at 6; but cf. Docket No. 1, Compl. Second Cause of Action, Element 2, Adverse Action ¶ 32, Third Cause of Action, Element 2, Adverse Action ¶ 51).

Following her departure in 2019, Plaintiff alleges that Defendant demanded that she repay it "multiple thousands of dollars" (Docket No. 1, Compl., First Cause of Action, at 4, Element 2, Adverse Actions, ¶ 8, Second Cause of Action, at 6, Element 2, Adverse Actions, ¶ 33, Third Cause of Action, at 8, Element 2, Adverse Actions, ¶ 52).   On September 16, 2019, Defendant's HR Service Center noted Plaintiff was overpaid for a leave of absence she took in April 2019.  Defendant paid Plaintiff at a regular work rate while she was in fact on leave for 72 hours.  Defendant asked Plaintiff to remit $1,952.72 overpayment and she did so.  (Docket No. 5, Def. Statement ¶¶ 12, 13.)

Meanwhile, Plaintiff claims she exhausted her administrative remedies and filed a charge of discrimination on November 1, 2019, with the Equal Employment Opportunity Commission ("EEOC") and subsequently received a Right to Sue letter (Docket No. 1, Compl., at 2, ¶¶ 5-7).  Defendant contends that it did not receive this initial charge, but it eventually received an EEOC charge from Plaintiff dated December 5, 2019 (Docket No. 5, Def. Memo. at 7, 21 n.10; id., Def. Atty. Decl. ¶¶ 3-4, Ex. C).  Defendant's exhibit of the initial EEOC charge is dated November 7, 2019 (Docket No. 5, Def. Atty. Decl. ¶ 3, Ex. B).

B.  Complaint

In the First Cause of Action, Plaintiff alleges sex discrimination because of the retaliatory reassignment of her sales territory (Docket No. 1, Compl., First Cause of

Action, at 3-5).  She also claims that, when she applied for her original position with Defendant, an unnamed male superior told her that she should not work but instead should be at home with her son (id., First Cause of Action, at 4, Additional Evidence of Sex Discrimination ¶ 14).  Upon her information and belief, Plaintiff contends that the wives of the male colleagues stayed home and did not work outside of the home (id. ¶ 15).  The record does not disclose when this interview episode occurred.

In the Second Cause of Action, Plaintiff alleges her reassignment was an adverse action under the ADA based upon her stress-induced disability (id., Second Cause of Action, at 6, Element 2, Adverse Action ¶¶ 26-33; see id. ¶ 10).  Plaintiff claims that "her disability is demonstrated by her request to take multiple medical leaves due to stress at work" (id. ¶ 25).

In the Third Cause of Action, she alternatively claims that Defendant retaliated in this reassignment, violating both Title VII and the ADA (id., Third Cause of Action, at 7-9).

In the Fourth Cause of Action, Plaintiff finally claims that Defendant violated the Equal Pay Act by reducing her salary due to the assignment to a less remunerative territory due to her sex.  She also claims Defendant assigned male employees to her former territory and paid them more than she earned.  (Id., Fourth Cause of Action, at 9-10.)

Plaintiff seeks recovery of lost wages and benefits; damages for her pain and suffering; payment of unreimbursed medical expenses; payment of costs for this action; reinstatement of pension and health care status; and punitive damages (id., WHEREFORE Cl.).

###### C.  Defendant's Pending Motion (Docket No. 5)

Defendant now alternatively moves to dismiss or for summary judgment (Docket No. 5)[1].  Responses initially were due by July 21, 2020, and reply by July 28, 2020 (Docket No. 8).  Plaintiff submitted his timely responding papers (Docket No. 12) and Defendant replied (Docket No. 13).

###### D.  Plaintiff's Motion to Supplement (Docket No. 14) and <u>Droz v. Boston Scientific</u>, U.S. District Court, Western District of Washington

On October 19, 2020, Plaintiff moved for consideration of supplemental authority, a decision in a Western District of Washington case against Defendant, <u>Droz v. Boston Scientific</u>, No. 2:20-CV-48-RSM-DWC, 2020 WL 5203585 (W.D. Wash. Sept. 1, 2020). Plaintiff cites <u>Droz</u> for the proposition that Defendant allegedly committed similar sex discrimination against another female employee.  (Docket No. 14.)  In <u>Droz</u>, Lindsay Droz was a female former sales employee of Boston Scientific who alleged she was paid less than male employees and had had her sales territory reduced (<u>id.</u>), <u>see Droz</u>, <u>supra</u>, 2020 WL 5203585, at *1.  As Plaintiff did here, Droz later resigned for medical reasons, <u>id.</u> at *2.  The district court in Western District of Washington granted Droz' Motion to Compel, <u>Droz</u>, <u>supra</u>, 2020 WL 5203585.  Corcoran now argues that her case was like Droz' case and therefore Corcoran's present allegations are plausible (Docket No. 14, Pl. Supp'al Memo. at 2-3).

---

[1]In support of its Motion, Defendant submits its Statement of Undisputed Facts; its Memorandum of Law; its attorney's Declaration, with exhibits; and the Declaration of Lynn Prust (Defendant's director of employment policy and employee relations) with exhibit, Docket No. 5.  Defendant replied with its Reply Memorandum of Law, Docket No. 13.

Plaintiff opposed this Motion with her Memorandum of Law, Docket No. 12.  She did not submit an opposing Statement of Facts.  Later, she submitted her supplemental authority, Docket No. 14; <u>see</u> Docket No. 15, Order of Oct. 22, 2020.  Defendant opposed granting leave to supplement, Docket No. 16.

One day after this Court granted leave for Plaintiff to supplement (Docket No. 15), Defendant filed a Memorandum opposing leave to supplement and in response thereto (Docket No. 16).  Nevertheless, this Court will consider Defendant's opposing arguments as well.

Upon this record, oral argument is unnecessary, and Defendant's Motion (Docket No. 5) is thus deemed submitted.

III.   **Discussion**

Pending here is Defendant's alternative Motion to Dismiss or for Summary Judgment (id.).  This Court first converts so much of the Motion to Dismiss into a Motion for Partial Summary Judgment contesting claims on statute of limitations grounds, then considers Defendant's Motion to Dismiss for failure to state any remaining claims.

A.  Applicable Standards

1.  Motion to Dismiss

Defendant has moved to dismiss on the grounds that the Complaint fails to state a claim for which relief can be granted (Docket No. 5).  Under Rule 12(b)(6), the Court cannot dismiss a Complaint unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).  As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), a Complaint must be dismissed pursuant to Rule 12(b)(6) if it does not plead "enough facts to state a claim to relief that is plausible on its face," id. at 570 (rejecting longstanding precedent of Conley, supra, 355 U.S. at 45-46).

To survive a motion to dismiss, the factual allegations in the Complaint "must be enough to raise a right to relief above the speculative level," Twombly, supra, 550 U.S. at 555.  As reaffirmed by the Court in Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009),

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' [Twombly, supra, 550 U.S.] at 570 . . . .  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556 . . . .  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Ibid.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."' Id., at 557 . . . (brackets omitted)."

Iqbal, supra, 556 U.S. at 678 (citations omitted).

A Rule 12(b)(6) motion is addressed to the face of the pleading.  The pleading is deemed to include any document attached to it as an exhibit, Fed. R. Civ. P. 10(c), or any document incorporated in it by reference, Goldman v. Belden, 754 F.2d 1059 (2d Cir. 1985).

In considering such a motion, the Court must accept as true all the well pleaded facts alleged in the Complaint.  Bloor v. Carro, Spanbock, Londin, Rodman & Fass, 754 F.2d 57 (2d Cir. 1985).  However, conclusory allegations that merely state the general legal conclusions necessary to prevail on the merits and are unsupported by factual averments will not be accepted as true.  New York State Teamsters Council Health and Hosp. Fund v. Centrus Pharmacy Solutions, 235 F. Supp. 2d 123 (N.D.N.Y. 2002).

2.  Alternative Dispositive Motions

A Motion to Dismiss is converted to Summary Judgment Motion upon notice of the conversion in the Notice of Motion and other moving papers (see Docket No. 5) of the alternate relief sought, Fed. R. Civ. P. 12(d); see Alberto-Culver Co. v. Andrea Dumon, Inc., 295 F. Supp. 1155, 1159 (N.D. Ill. 1969) (recognizing alternative motions for summary judgment or dismissal when evidence is not related to the motion to dismiss), aff'd in part, rev'd in part on other grounds, 466 F.2d 708 (7th Cir. 1972) (Stevens, J.); 5C Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1366, at 179 n.26 (Civil 3d 2004).  "[W]hen a motion to dismiss is combined with a motion for summary judgment and outside matters are considered by the court with respect only to the latter motion, the district judge may dispose of the motion either under Rule 56 or may limit its disposition to the motion to dismiss," 5C Federal Practice and Procedure, supra, § 1366, at 179.

On a Rule 12(b)(6) Motion, if matters outside of the Complaint are presented and not excluded by this Court, the Motion "must be treated as one for summary judgment under Rule 56," with all parties be given reasonable opportunity to present all materials pertinent to this converted Rule 56 Motion, Fed. R. Civ. P. 12(d).  This Court has complete discretion "to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12 (b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it," 5C Federal Practice and Procedure, supra, § 1366, at 159.

Plaintiff objects to conversion because of Defendant's characterization of "indisputable facts" support the Motion as one for summary judgment (Docket No. 12, Pl.

Memo. at 1).  This Court is not bound by the characterization of the proffered facts and will consider the additional evidence submitted by Defendant.  With that adoption, This Court thus converts Defendant's Motion to Dismiss into a Motion for Partial Summary Judgment (for Defendant's statute of limitations defense).  Defendant essentially moves for partial summary judgment only on its limitations defense.  It only introduced additional evidence in support of its Motion for Summary Judgment dismissing the case (or much of it) on statute of limitations grounds, limited to that single defense (Docket No. 5, Def. Memo. at 20-23, 23-24).  Defendant did not introduce evidence to counter Plaintiff's claims on other grounds.  As an alternative Motion to Dismiss, Defendant accepts the facts alleged in the Complaint as true while arguing that Plaintiff fails to allege a claim (Docket No. 5, Def. Memo. at 3 n.2).  Under Rule 56(a), "a party may move for summary judgment, <u>identifying each claim or defense—or the part of each claim or defense</u>-on which summary judgment is sought," Fed. R. Civ. P. 56(a) (emphasis added); <u>see</u> 10B Charles A. Wright, Arthur R. Miller & Mary Kay Kane, <u>Federal Practice and Procedure</u> § 2736, at 294 (2016).  Defendant here partially moves for summary judgment on the statute of limitations defense.

Defendant also gave adequate notice to Plaintiff, and she had a reasonable opportunity to present evidence in opposition to summary judgment.  Defendant noticed its Motions in the alternative (Docket No. 5), <u>see</u> <u>Stone v. Trump</u>, 400 F. Supp.3d 317, 350 (D. Md. 2019).  Plaintiff does not assert any prejudice from conversion of the Motion to Dismiss into one for Summary Judgment despite responding with a Memorandum of Law opposing the Motion to Dismiss (Docket No. 12).  "When the movant expressly captions its motion 'in the alternative' as one for summary judgment and submits matters

outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur," Stone, supra, 400 F. Supp.3d at 350 (citation omitted).  Plaintiff also had sufficient opportunity to present materials relevant to a Summary Judgment Motion, see 5C Federal Practice and Procedure, supra, § 1366, at 198.

When a defendant raises its affirmative defense in a Motion to Dismiss and submits outside matters advancing that defense, that Motion also is converted into a Motion for Summary Judgment, 5C Federal Practice and Procedure, supra, § 1366, at 204 & n.38. Defendant here presented evidence beyond the Complaint on the timing of Plaintiff's claims.  The Complaint does not allege when events for Plaintiff's claims occurred; hence, the extra-pleading materials cited by Defendant to assert the statute of limitations defense compels conversion of the Motion to Dismiss into a Motion for Partial Summary Judgment to address that defense.

Therefore, this Court will consider the alternative Motion for Partial Summary Judgment as to the timeliness of claims in this action, see Fed. R. Civ. P. 12(d), 56(a), see Rosette, Inc. v. United States, No. CIV 93-1379 BB/JHG, 1998 WL 36030230, at *2 (D.N.M. Oct. 8, 1998).  The surviving timely claims (and Defendant's failure to state a claim objections) will be considered in Defendant's Motion to Dismiss.

### 3.  Motion for Summary Judgment

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505,

91 L.Ed.2d 202 (1986).  An issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," id.

If this Court does not grant all relief requested, an Order may be entered "stating ay material fact—including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the case," id. R. 56(g).  Partial summary judgment may be entered on an affirmative defense, 10B Federal Practice and Procedure, supra, § 2737, at 309; International Ship Repair and Marine Servs., Inc. v. St. Paul Fire and Marine Ins. Co., 944 F. Supp. 886, 891 (M.D. Fla. 1996).  "Where multiple claims are made or multiple defenses are asserted the remedy [summary judgment] is proper if no genuine issue of fact exists relative to any one claim or defense that is determinative of part or all of the issues." Hunt v. Pick, 240 F.2d 782, 784 (10th Cir. 1957); see Rosette, supra, 1998 WL 36030230, at *2.

The movant seeking summary judgment has the burden (through pleadings, depositions, answers to interrogatories, admissions, affidavits, and other materials, Fed. R. Civ. P. 56(c)(1)) to demonstrate the absence of a genuine issue of material fact, Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003).

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion," Addicks v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).  "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper," Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  The function of the Court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue of fact for trial," Anderson, supra,

477 U.S. at 249.  "Assessment of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment," <u>Rule v. Brine, Inc.</u>, 85 F.3d 1002, 1011 (2d Cir. 1996).

But a "mere scintilla of evidence" in favor of the nonmoving party will not defeat summary judgment, <u>Anderson</u>, <u>supra</u>, 477 U.S. at 252.  A nonmoving party must do more than cast a "metaphysical doubt" as to the material facts; it must "offer some hard evidence showing that its version of the events is not wholly fanciful," <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).  That is, there must be evidence from which the jury could reasonably find for the nonmoving party, <u>Anderson</u>, <u>supra</u>, 477 U.S. at 252.

This Court's Local Civil Rules require that movant submit "a separate, short, and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried," W.D.N.Y. Loc. Civ. R. 56(a)(1), and the opponent to submit a response to each numbered paragraph in the movant's statement, <u>id.</u> R. 56(a)(2).  Each numbered paragraph in the movant's statement will be deemed admitted unless specifically controverted by a correspondingly numbered paragraph in the opponent's statement, <u>id.</u>

B.  Partial Summary Judgment and Acceptance of Facts Asserted Herein

After addressing its Partial Summary Judgment Motion, Defendant still moves to dismiss Plaintiff's remaining claims for failure to state a claim.  It focused on whether Plaintiff pled those claims and not whether Defendant should prevail as a matter of law against those claims or the absence of material facts to support them (Docket No. 5, Def. Memo. at 9-20, 23-24).

13

This conversion of one part of this case into a Motion for Partial Summary Judgment thus requires this Court to consider the alleged facts under different standards (see id. at 3, 4-7 (setting out undisputed facts applicable to the Motion to Dismiss and "Indisputable Facts" for the Motion for Summary Judgment)).  For summary judgment, evidence is viewed in the light of Plaintiff as opponent and the question is whether there are material facts to preclude entry of judgment.  For Motion to Dismiss, facts plead are presumed true as alleged, and the question is the sufficiency of the pleading.

First, the parties here do not dispute the facts or contest their materiality under either dispositive motion.  As a Motion to Dismiss, Defendant admits for purposes of the Motion the allegations in the Complaint (Docket No. 5, Def. Memo. at 3 & n.2).  Plaintiff has not filed an objection to Defendant's Statement or a Statement of Facts of her own to oppose Defendant's converted Motion for Summary Judgment on its timeliness defense.  Second, as a Motion for Partial Summary Judgment, under this Court's Local Rules, Defendant's uncontested Statement of Fact (containing citations to admissible evidence in the record) must be deemed admitted by Plaintiff, W.D.N.Y. Loc. Civ. R. 56(a)(2).  Third, part of Defendant's facts relies upon Plaintiff's counsel pre-litigation letter (Docket No. 5, Def. Atty. Decl. Ex. A), which by itself may not be admissible but is attached as an exhibit to defense counsel's Declaration and has been submitted without objection.  Some of the facts regarding the timing of events are mentioned only in this letter.

## C.  Motion for Summary Judgment on Limitations Grounds

### 1.  Statute of Limitations Standards

This Court next addresses the threshold issue whether these claims are timely.  As Defendant notes (id. at 20), the Complaint does not allege dates when events occurred. Furthermore, Plaintiff has not raised this as a material issue of fact.

#### a.  Title VII, ADA, and Retaliation Under These Acts

A condition precedent for bringing a Title VII or ADA claim is the Plaintiff showing that she exhausted her administrative remedies, e.g., Deravin v. Kerik, 335 F.3d 195, 200 (2d Cir. 2003) (Title VII); Lebowitz v. New York City Dep't of Educ., 407 F. Supp.3d 158, 174 (E.D.N.Y. 2017) (ADA) (citations omitted); Hendrix v. Pactiv LLC, 488 F. Supp.3d 43, 51 (W.D.N.Y. 2020) (Larimer, J.) (ADA).

As this Court observed in Banks v. General Motors LLC, No. 14CV970, 2020 WL 6827707, at *9, 11 (W.D.N.Y. Nov. 20, 2020) (Skretny, J.), Plaintiff must file charges with the EEOC within 300 days of the alleged discriminatory acts, 42 U.S.C. § 2000e-5(e)(1); see Flaherty v. Metromail Corp., 235 F.3d 133, 136 n.1 (2d Cir. 2000), to assert timely Title VII claims, e.g., Tsai v. Rockefeller Univ., 137 F. Supp.2d 276, 278, 280 (S.D.N.Y. 2001) (Title VII and ADA claims).

A retaliation claim under the ADA is subject to a three-year statute of limitations, Volpe v. New York City Dep't of Educ., 195 F. Supp.3d 582, 594 (S.D.N.Y. 2016).

#### b.  Equal Pay Act

The Equal Pay Act, 29 U.S.C. § 206(d), bars discrimination in pay based upon gender for equal work on jobs performed with equal skill, effort, and responsibility, see Cox v. Quick & Reilly, Inc., 401 F. Supp. 2d 203, 211 (N.D.N.Y. 2005), quoting 29 U.S.C. § 206(d)(1).  The act generally has a two-year statute of limitations, 29 U.S.C. § 255(a),

see, e.g., Pollis v. New School for Social Research, 132 F.3d 115, 118 (2d Cir. 1997) (see Docket No. 5, Def. Memo. at 21), unless the employee establishes the employer committed a willful violation, then there is a three-year limitations period, Cox, supra, 401 F. Supp. 2d at 212.  Each violative paycheck states a cause of action, id.  Unlike Title VII, there is no requirement of commencing an administrative proceeding before suing for violation of the Equal Pay Act, Ledbetter v. Goodyear Tire & Rubber Co., 550 U.S. 618, 640, 127 S.Ct. 2162, 127 L.Ed.2d 982 (2007); see Washington Cnty. v. Gunther, 452 U.S. 161, 175 n.14, 101 S.Ct. 2242, 68 L.Ed.2d 75 (1981), and the limitations periods under the Equal Pay Act are more generous than those for Title VII, Washington Cnty., supra, 452 U.S. at 175 n.14.

Plaintiff has not alleged willful conduct to justify the three-year limitations period (see Docket No. 5, Def. Memo. at 21 n.9).  She invokes the Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5 (2009) (relevant codification at 42 U.S.C. § 2000e-5(e)(3)), and its two-year limitations period from each paycheck as the relevant standard (Docket No. 12, Pl. Memo. at 1).

The Lilly Ledbetter Fair Pay Act does not provide a cause of action but provides a statute of limitations for "Title VII discrimination claims based on unequal compensation [that] begins to run anew following each receipt of unequal pay," Boyar v. City of N.Y., No. 10 CV 65(HB), 2010 WL 4345737, at *14 (S.D.N.Y. Oct. 28, 2010); Hughes v. Xerox Corp., 37 F. Supp.3d 629, 644 (W.D.N.Y. 2014) (Wolford, J.).

The Lilly Ledbetter Act allows a plaintiff to seek relief for back pay "up to two years preceding the filing of the charge," 42 U.S.C. § 2000e-5(e)(3)(B); 42 U.S.C. § 12117(a), with the EEOC or state employment discrimination agency.  Accrual occurs under the Lilly

Ledbetter Act each time a wage, benefit, or other compensation is underpaid, see 42 U.S.C. § 2000e-5(e)(3)(A) (Docket No. 12, Pl. Memo. at 7 & n.12).  The Act applies to traditional pay discrimination claims, addressing "discrimination in compensation," 42 U.S.C. § 2000e-5(e)(3)(A) (as amended by the Lilly Ledbetter Act).  The Act does not apply "to a pay reduction that flows from another adverse employment action," Davis v. Bombardier Transp. Holdings (USA) Inc., 794 F.3d 266, 271 (2d Cir. 2015) (rejecting claim that pay reduction due to demotion is actionable under the Lilly Ledbetter Act).

### 2.  Parties' Contentions

Defendant argues that most of Plaintiff's claims are time barred (Docket No. 5, Def. Memo. at 20).  Applying the 300-day limitation periods for Title VII and ADA, 42 U.S.C. §§ 2000e-5(e)(1), 12117(a), and the November 1, 2019, EEOC Charge, Defendant concludes most to all of Plaintiff's claims occurred before that period ran (id. at 21-22). Defendant denies that seeking repayment of wage overpayment after Plaintiff's resignation was retaliatory conduct (id. at 22-23), conceding that post-employment retaliation may remain timely (id. at 22).

Plaintiff argues that Defendant invokes the wrong statute of limitations for her Title VII and Equal Pay Act claims, invoking the Lilly Ledbetter Act two-year period from each paycheck (Docket No. 12, Pl. Memo. at 1, 7-8, 12).  Plaintiff replies that statute of limitations is an affirmative defense (id. at 7).  Defendant, however, raises this defense in the Summary Judgment portion of its Motion (Docket No. 5, Def. Memo. at 20-23).  With the conversion of the Motion to Dismiss (or so much of it alleging statute of limitations defense) into a Motion for Partial Summary Judgment, this Court can consider the timeliness of Plaintiff's claims.

Plaintiff next argues that each paycheck constituted a separate cause of action with the statute of limitations running for that paycheck (Docket No. 12, Pl. Memo. at 7), citing the Lilly Ledbetter Fair Pay Act of 2009 (relevant codified at 42 U.S.C. § 2000e-5(e)(3)) (id. at 7-8, 7 n.19).  She concludes that Defendant's argument is "without merit" (id. at 8) without stating how her non-salary claims were timely.

Defendant replies that the Lilly Ledbetter Act did not extend Plaintiff's Title VII or ADA claims because those claims were not pay discrimination claims (Docket No. 13, Def. Reply Memo. at 1-6).  The Lilly Ledbetter Act allowed a plaintiff to seek relief for back pay "up to two years preceding the filing of the charge," 42 U.S.C. § 2000e-5(e)(3)(B); 42 U.S.C. § 12117(a); thus, back pay claims still are based upon the filed charge (id. at 2).  Plaintiff's claims are Title VII and ADA claims and not back pay claims governed by the Act (id. at 3; see id. at 3-4 (distinguishing sex or disability discrimination from pay discrimination)).

Defendant then notes that Plaintiff does not contest when she was transferred, when she complained of it, or when she took her medical leave, and she did not contest the applicable statutes of limitations for her claims (id.).  It concludes that most, if not all, of her claims should be dismissed on statute of limitations grounds (id. at 1, 2).

       3.  Analysis

          a.  Title VII

As for Plaintiff's Title VII discrimination and retaliation claims, Plaintiff filed her EEOC charge on November 1, 2019 (Docket No. 1, Compl. ¶ 6).  Even if not received by Defendant on that date (Docket No. 5, Def. Memo. at 7; id., Def. Atty. Decl. ¶¶ 3-4, Ex. C), it argues that this is the relevant accrual date (see Docket No. 5, Def. Memo. at 5, 21-22,

21 n.10).  Adopting November 1, 2019, as the accrual date, three hundred days prior to that day is Saturday, January 5, 2019, with the next business day on Monday, January 7, 2019, see Fed. R. Civ. P. 6(a)(1)(C).

The Complaint does not allege precisely when the discriminatory and retaliatory events occurred or when Plaintiff was paid.  Plaintiff does not allege when Defendant reassigned her territory or when she became disabled, and Defendant discriminated against her.

There are scant dates alleged in this case.  Plaintiff does complain about the number of female partners relative to the number of male partners in 2017 and 2018-19. According to Defendant's uncontested Statement of Facts, Plaintiff's attorney cited complaints of discrimination in August and October 2017 and alleged retaliatory action in changing Plaintiff's territory in 2018.  Plaintiff's counsel then noted that, in the beginning of 2019, Plaintiff learned that she would be returned to the management of her former supervisor but in a territory with lower revenue, losing $6 million in sales.

There is also an undated allegation that, when Plaintiff applied for her position, a male supervisor said she should be home with her child rather than working (Docket No. 1, Compl., First Cause of Action, at 4, Additional Evidence of Sex Discrimination ¶ 14); see Docket No. 5, Def. Atty. Decl. Ex. A, Pl. Atty. Letter at 3).  She did not allege when she started with Boston Scientific and Defendant does not state when she began. She alleged that she held her partnership for seven years (Docket No. 1, Compl. First Cause of Action ¶ 9, Second Cause of Action ¶ 34).  This reference to being dissuaded from working during her initial interview did not occur after January 2019.  Therefore, her initial hiring was well before January 2019.

Plaintiff also apparently has not alleged continuing harm that would relate to a later, timely incident.

What is certain is that Plaintiff's Title VII claims prior to January 2019 (including her initial interview) are time barred. From the record herein, this bar encompasses all of Plaintiff's Title VII discriminatory and retaliation claims before the latest event in the beginning of 2019, her reassignment to her former supervisor and to a less remunerative territory.

The Lilly Ledbetter Act does not change this analysis for Plaintiff's pre-January 2019 discrimination claims. Plaintiff alleges Title VII discrimination and retaliation claims (as well as Plaintiff's ADA disability and retaliation claims, discussed below) are not back pay claims. These are claims for adverse employment actions (her reassignment from her lucrative territory) which reduced Plaintiff's salary. The Lilly Ledbetter Act (and its "generous accrual provisions," Davis, supra, 794 F.3d at 271) addresses stand-alone pay discrimination, id. She does not allege pay discrimination based upon gender. Her EEOC charges did not assert this (see Docket No. 5, Def. Atty. Decl. Exs. B, C). Furthermore, the Lilly Ledbetter Act would not apply to pay discrimination based upon disability under the ADA. Plaintiff also has not alleged when she received the underpayment in her salary due to sex that would fall under the Ledbetter Act limitations provision. Plaintiff's untimely Title VII and ADA claims are not extended or revived by the Lilly Ledbetter Act.

Plaintiff has not presented evidence for any claims after January 2019, save her attorney's vague statement (not alleged in the Complaint) that "at the beginning of 2019" Defendant assigned Plaintiff to a less productive territory (Docket No. 5, Def. Statement ¶ 9; Docket No. 5, Def. Atty. Decl. Ex. A, Pl. Attorney Letter at 2). Without further

specification of dates, if that "beginning of 2019" was after January 7, 2019, her claims arising from the reassignment would be timely.  This uncertainty as to the dates presents an issue of fact that precludes summary judgment dismissing Plaintiff's early 2019 reassignment claim.

Defendant's alternative Motion for Partial Summary Judgment (Docket No. 5) therefore is granted in part, denied in part.  What remains for determination is Plaintiff's Title VII discrimination and retaliation claims for her reassignment in early 2019 to the less remunerative territory.

### b.  ADA and Retaliation Claims

Regarding Plaintiff's ADA and retaliation claims, the Complaint also has a dearth of date citations.  It does not clearly allege when Defendant purportedly violated the ADA by discriminating against her based upon her debilitating stress or when she incurred her stress.  Defendant claims that her attorney asserted that Plaintiff took Family and Medical Leave in 2017 and 2018 due to stress arising from her discrimination (Docket No. 5, Def. Statement ¶ 8; Docket No. 5, Def. Atty. Decl., Ex. A, Pl. Atty. Letter at 2).  She alleges that this stress is subject of her ADA claim (see Docket No. 1, Compl., Second Cause of Action, Element 1, ¶ 25).  The Complaint, however, never alleges that her stress was a disability or that Defendant perceived her to be disabled due to this stress (see also Docket No. 5, Def. Memo. at 14).  The Complaint also does not allege continuing disability.

As with her Title VII claims, these ADA claims require exhaustion of administrative remedies.  Plaintiff did this by filing her charge with the EEOC on November 1, 2019, alleging disability discrimination (Docket No. 1, Compl. ¶ 6; cf. Docket No. 5, Def. Atty.

Decl. ¶¶ 3, 4, Exs. B (Notice of Charge, Nov. 7, 2019), C (Charge, Dec. 5, 2019)).  Again, accepting November 1, 2019, as the relevant charge date (see Docket No. 5, Def. Memo. at 21 n.10), timely ADA claims arose from January 7, 2019.

Some alleged disability discrimination events that are part of Plaintiff's ADA claims are time barred.  For example, Plaintiff claims she took medical leave in 2017 and 2018 that she attributes to her disability.  This leave (and any discrimination occurring around that time), however, predates the running of the limitations period for her ADA claim in January 2019 and would be time barred.

As with her Title VII claims, the last event was the early 2019 reassignment to her former supervisor and reduction of revenue, but this period is not specified further.  There is no evidence or allegation that this reassignment in early 2019 had anything to do with her claimed disability (see Docket No. 5, Def. Memo. at 14).  She only alleges that she was reassigned after taking medical leave (Docket No. 1, Compl., Second Cause of Actions, Element 2, Adverse Actions, ¶ 32, Third Cause of Action, Element 2, Adverse Actions, ¶ 51) without alleging that the reassignment was related to her taking medical leave.

Both sides fail to address the timing of Plaintiff's ADA claim; Plaintiff by not alleging when events occurred and Defendant in not identifying those events which occurred before the limitations period began.  The paucity of allegations as to when events occurred raises issues of fact, especially for events from the "early in 2019" period that may be timely.  Plaintiff, however, cannot now argue that these issues are material issues precluding summary judgment because she has not alleged that disability discrimination was a reason for the reassignment.  She only alleges the chronological connection of

medical leave followed by the reassignment without alleging the reassignment was the product of disability discrimination.  She alleges elsewhere that the reassignment was due to sex discrimination and retaliation for complaints (e.g., id., Second Cause of Action, Element 2, Adverse Actions, ¶¶ 27-31) but fails to allege a causal link to disability discrimination.

Thus, her ADA claims from before January 7, 2019, are time barred.  As for her ADA claims from "early in 2019" and possibly after January 7, 2019, Plaintiff fails to allege a causal link between her disability (or discrimination therefrom) and her reassignment to make that event timely.  Defendant's Motion for Summary Judgment (Docket No. 5) as to the timeliness of the ADA claims is granted.

c.  Equal Pay Act

With the Equal Pay Act's two-year limitations period (absent allegation of willful action for a longer period, see Docket No. 5, Def. Memo. at 21 n.9; cf. Docket No. 12, Pl. Memo. at 1) and no required prior administrative charge to initiate her claim, Plaintiff's timely Equal Pay Act claims arose from May 21, 2018, forward (or two years before filing the Complaint, Docket No. 1; Docket No. 13, Def. Reply Memo. at 2 n.1).  These claims arise essentially with each alleged underpaid paycheck.

Paychecks prior to May 21, 2018, that Plaintiff claims violated the Equal Pay Act, however, are time barred.  Plaintiff was notified of this possibility.  The notice within Plaintiff's Right to Sue letter also indicated that "back pay due for violations that occur **more than 2 years (3 years) before you file suit** may not be collectible" (Docket No. 5, Def. Atty. Decl. ¶ 5, Ex. D, at 1 (emphasis in original)).

Plaintiff's Equal Pay claims also ended when she resigned sometime in August 2019 (see Docket No. 5, Def. Statement ¶ 1).  Thus, the extent of her Equal Pay claims is from May 21, 2018, to August 2019.

Defendant's Motion for Summary Judgment (Docket No. 5) is granted in part for dismissal of the untimely Equal Pay Act claims prior to May 21, 2018.

### d.  Timely Claims

Plaintiff has alleged timely Title VII discrimination and retaliation claims for actions after January 2019 and Equal Pay Act claims between May 21, 2018, to August 2019. With these claims remaining, this Court next addresses Defendant's Motion to Dismiss (Docket No. 5) for failure to state a claim and determines whether Plaintiff alleges plausible claims.

### D.  Motion to Dismiss—Title VII

#### 1.  Applicable Standards

Plaintiff must identify a protected class (here, women), identify an adverse action, show that she was qualified for the job, and that the job was still being performed to allege a Title VII claim (Docket No. 1, Compl., First Cause of Action ¶ 12), McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); see Littlejohn v. City of N.Y., 795 F.3d 297, 307 (2d Cir. 2015); Patane v. Clark, 508 F.3d 106, 112 (2d Cir. 2007).

Plaintiff is correct (Docket No. 12, Pl. Memo. at 7) that she did not need to plead a prima facie case under Title VII at the Motion to Dismiss stage, Swierkiewicz v. Sorema N.A., 534 U.S. 506, 515, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); Vega v. Hempstead Union Free School Dist., 801 F.3d 72, 76, 83-84 (2d Cir. 2015) (under plausibility standard after

Iqbal).   While not needing to prove a <u>prima facie</u> Title VII case (and although she alternatively claims to have done so, <u>id.</u>) at this stage of the action, Plaintiff needs to allege facts that provide "minimal support for the proposition that the employer was motivated by discriminatory intent," <u>Littlejohn</u>, <u>supra</u>, 795 F.3d at 311; <u>Vega</u>, <u>supra</u>, 801 F.3d at 85.   At the first phase of the case as here "the prima facie requirements are relaxed," <u>Littlejohn</u>, <u>supra</u>, 795 F.3d at 307.   At this initial phase, "the plaintiff can establish a prima facie case without evidence sufficient to show discriminator motivation," <u>id.</u> (citing <u>McDonnell Douglas</u>, <u>supra</u>, 411 U.S. at 802; <u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248, 253-54, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (applying <u>McDonnell Douglas</u> standard for sex discrimination claim)).

Plaintiff thus must allege discrimination either by direct evidence, <u>Trans World Airlines, Inc. v. Thurston</u>, 469 U.S. 111, 121, 105 S.Ct. 613, 83 L.Ed.2d. 523 (1985) ("<u>TWA</u>"); <u>Teamsters v. United States</u>, 431 U.S. 324, 358 n.44, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), or (as alleged here, Docket No. 1, Compl., First Cause of Action, ¶ 12) by the burden shifting analysis from <u>McDonnell Douglas</u>, <u>supra</u>, 411 U.S. at 802-04; <u>Burdine</u>, <u>supra</u>, 450 U.S. at 252-56.   For direct evidence of discrimination, Plaintiff must meet her "initial burden of offering evidence adequate to create an inference that an employment decision was based on a discriminatory criterion illegal under the Act," <u>Teamsters</u>, <u>supra</u>, 431 U.S. at 358.

## 2.  Parties' Contentions

Defendant argues that Plaintiff fails to state a plausible claim for sex discrimination (Docket No. 5, Def. Memo. at 9-12).   Defendant identifies two possible adverse actions Plaintiff may have premised her sex discrimination claims upon, her reassignment to less

remunerative area and her compelled repayment of leave period salary after her resignation.  Defendant denies that Plaintiff plausibly allege sex discrimination for these adverse actions.  (Id. at 10.)  Defendant argues that the reassignment may have stated a retaliation claim and not a Title VII discrimination claim (id. at 10-11).

As for Plaintiff's claim of compelled repayment, Defendant denies that she states a claim as employment discrimination since it occurred after her resignation (id. at 10-11, 11-12; see Docket No. 13, Def. Reply Memo. at 6-7, citing Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 64, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006); Bryant v. Covina-Valley Unif. Sch. Dist., No. CV 17-1274 PSG (AJWx), 2018 WL 6016924, at *3 (C.D. Cal. Jan. 10, 2018)).

Plaintiff argues she plausibly alleges a Title VII discrimination claim and that the plausibility standard from Twombly and Iqbal did not create a heightened pleading standard for discrimination claims contrary to Defendant's contention (Docket No. 12, Pl. Memo. at 2-7).  She simply alleges reduced compensation because of her sex or her complaints of sex discrimination (id. at 6).  While arguing (without citation) she need not plead a prima facie case under Title VII or the ADA, Plaintiff concludes she nevertheless did allege a prima facie case (id. at 7).  Plaintiff then argues that Defendant's state of mind is critical to her case (id. at 8-15).

In reply, Defendant asserts that Plaintiff did not address the substance of its argument, focusing instead on the Twombly/Iqbal plausibility standard (Docket No. 13, Def. Reply Memo. at 7-8)  Plaintiff "offers no other argument as to why the Court should not dismiss her claims.  Indeed, she does not cite her own Complaint or any specific

factual allegations to demonstrate the sufficiency of her claims" (id. at 8).   Defendant concludes she abandoned those unargued claims or fails to state them (id. at 9).

Plaintiff supplemented her response with reference to Droz, supra, 2020 WL 5203585, analogizing her case to that of Lindsay Droz and concluding that, as Droz did, Plaintiff plausibly alleged her claims (Docket No. 14, Pl. Supp'al Memo.)   Defendant opposed this supplemental Memorandum (Docket No. 16).   It argued that the supplement did not address Defendant's Motion.   Defendant also denied that Droz' case has any relationship with Corcoran's.   (Id. at 1-3, 4.)

3.   Analysis—Reassignment and Title VII

a.   Sufficiency of Pleading

Despite denying the need to plead a prima facie case, Plaintiff used the McDonnell Douglas prima facie case standard in alleging her Title VII claim that Defendant discriminated against her because of her sex (Docket No. 12, Pl. Memo. at 7; see generally Docket No. 1, Compl., First Cause of Action), cf. Vega, supra, 801 F.3d at 85-86.   She alternatively argues that she alleged sufficient facts for a prima facie case (Docket No. 12, Pl. Memo. at 7).   Under Iqbal, the issue is whether she has plausibly alleged these elements, id. at 86.

Considering the First Cause of Action, Plaintiff satisfies the first element of her Title VII claim by alleging membership in a protected class (being a woman) (Docket No. 1, Compl., First Cause of Action, Element 1, Protected Classes and Activity, ¶ 1).

Second, she alleges two possible adverse actions.   First, she claims her reassignment to a less lucrative sales territory was an adverse action (Docket No. 1, Compl., First Cause of Action, Element 2, at pages 3-4)   This element states a plausible

27

claim to survive a Motion to Dismiss.   Plaintiff's reassignment coupled with a male replacement at higher remuneration minimally alleges Defendant's discriminatory intent to discriminate against Plaintiff based on sex.

Next, she argues that she was compelled to repay thousands of dollars to Defendant (id., First Cause of Action, at 4, Element 2, Adverse Actions, ¶ 8).  That alleged adverse action is considered separately because Plaintiff repeats it for other causes of action (id., Second Cause of Action, at 6, Element 2, Adverse Actions, ¶ 33, Third Cause of Action, at 8, Element 2, Adverse Actions, ¶ 52).

Third, Plaintiff next alleges her qualifications for her sales position and the work was still being performed (Docket No. 1, Compl., First Cause of Action, Element 3a, ¶¶ 9-10, Element 3b, ¶¶ 11-13).  Defendant does not dispute the sufficiency of this allegation.

Finally, she alleged that her gender was a motivating factor in the reassignment, noting the dearth of female partners with Defendant and male employees who took over territory earned more than she did (Docket No. 1, Compl., First Cause of Action, Additional Evidence of Sex Discrimination ¶¶ 14-21).  Defendant has not objected to the sufficiency of this element.

As for these remaining timely claims from 2019 analyzed above, Plaintiff minimally alleges a plausible claim of sex discrimination.  She plausibly alleges an adverse action from Defendant changing her sales territory (and reduced income as a result).

> b.  Pleading Discrimination from Retaliation Allegations

Defendant cites McMenemy v. City of Rochester, 241 F.3d 279, 282 (2d Cir. 2001), in support of the proposition that Plaintiff's allegation might be "relevant for purposes of a Title VII retaliation claim rather than a sex discrimination claim" (Docket No. 5, Def. Memo.

at 10-11).  This case does not make this distinction.  In <u>McMenemy</u>, plaintiff administrator Laurie McMenemy alleged retaliation in violation of Title VII following the investigation by her late husband (a fire department lieutenant) of a sexual harassment complaint against another firefighter, <u>id.</u> at 280-81, 282.  McMenemy did not allege sex discrimination.  The Second Circuit thus never had to address whether a plaintiff could allege facts that state both sex discrimination and retaliation.

The Supreme Court in <u>Burlington Northern</u> recognized the substantive antidiscrimination and antiretaliation provisions of Title VII "are not conterminous," 548 U.S. at 67, and the provisions govern different aspects of the employment relationship, <u>id.</u> at 61-62 (quoting 42 U.S.C. §§ 2000e-2(a) (substantive provision), 2000e-3(a) (antiretaliatory provision)).  The difference noted was the substantive provision focused on affecting employment and altering the conditions of employment, 548 U.S. at 62-63, and for different purposes, <u>id.</u> at 63.

> "The antidiscrimination provision seeks a workplace where individuals are not discriminated against because of their racial, ethnic, religious, or gender-based status. . . . The antiretaliation provision seeks to secure that primary objective by preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees.  The substantive provision seeks to prevent injury to individuals based on who they are, <u>i.e.</u>, their status. The antiretaliation provision seeks to prevent harm to individuals based on what they do, <u>i.e.</u>, their conduct.

<u>Id.</u> (citation to <u>McDonnell Douglas</u>, <u>supra</u>, 411 U.S. at 800-01, omitted).  The Court concluded that retaliation cannot be limited to an employer's actions and harms concerning employment and the workplace, <u>id.</u> at 63, 67.  Thus, retaliation claims can exist after an employee no longer works for the employer, <u>id.</u> at 67.

A defendant employer may discriminate against a plaintiff while also retaliating against her.

Defendant cites no other authority which concludes that the facts constituting retaliation cannot also constitute proof of sexual discrimination.  In <u>Vega</u>, teacher Carlos Vega alleged discrimination based on his ethnicity, where the school district assigned him to bilingual and Spanish-speaking classes with additional work but without increased compensation.  Following filing his EEOC charge, Vega alleged defendant retaliated by assigning him to classes with notoriously excessive number and frequency of absences.  801 F.3d at 76-77.  Vega's discrimination and retaliation allegations overlapped, <u>id.</u>  The Second Circuit reversed the grant of a motion to dismiss, holding that Vega alleged both discrimination and retaliation claims, <u>id.</u> at 82-89, 89-92.

In <u>Sheehan v. Purolator, Inc.</u>, No. CV-81-1103, 1987 WL 12017, at *1, 2 (E.D.N.Y. May 29, 1987), the court conducted a bench trial on plaintiff Patricia Sheehan's allegations of sex discrimination in salary and denial of her request to transfer to the field and retaliation claims against her for filing a charge of discrimination.  The court ultimately held that she failed to prove her claims, <u>id.</u> at *2.  By trying her discrimination claims with the retaliation claim, Sheehan established that she adequately pled them initially.

Here, Corcoran alleges that Defendant transferred her to a less lucrative sales territory because she lodged a sex discrimination complaint.  While this possibly alleges a retaliation claim under Title VII (to be discussed below), this allegation does state a plausible claim for sex discrimination under Title VII.  Plaintiff also alleges the difference in sales revenue (hence salary) between her new territory and her former assignment to a male employee, alleging discrimination based on sex distinct from a retaliation claim.

As alleged and tried in Sheehan, supra, 1987 WL 12017, at *1, Plaintiff's simple allegations of reassignment after she made a sex discrimination complaint (coupled with her male successor reaping the benefits of her former, more profitable territory) states a sex discrimination claim.

It is unclear, however, how Defendant's state of mind is at issue for Defendant's Motion to Dismiss (or for Plaintiff to establish her prima facie case) where the question under that Motion is whether her Complaint states a claim.   Plaintiff argues that Defendant's state of mind is critical to her case for her for the prima facie case (Docket No. 12, Pl. Memo. at 8-15).   The Complaint does not allege Defendant's state of mind. Once Plaintiff established a prima facie case of discrimination, under McDonnell Douglas, supra, 411 U.S. 802-04, the burden shifts to Defendant to articulate some legitimate, nondiscriminatory reason for its action, Burdine, supra, 450 U.S. at 254-56, which may include evidence of Defendant's state of mind.   Plaintiff may refute this articulation in the third McDonnell Douglas stage and showing that Defendant's determination was the result of discrimination beyond proving a prima facie case, see Burdine, supra, 450 U.S. at 256; McDonnell Douglas, supra, 411 U.S. at 804-05.   This is premature at a Motion to Dismiss stage; the present issue is whether Plaintiff states a Title VII claim.

Therefore, Defendant's Motion to Dismiss (Docket No. 5) the First Cause of Action alleging sex discrimination under Title VII is denied.

### 4.   Plaintiff Repayment of Salary Overage

Plaintiff alleges in her First, Second, and Third Causes of Action that she was forced to remit to Defendant "multiple thousands of dollars."   She claims this repayment was an adverse action.   (Docket No. 1, Compl., First Cause of Action, at 4, Element 2,

Adverse Actions, ¶ 8, Second Cause of Action, at 6, Element 2, Adverse Actions, ¶ 33, Third Cause of Action, at 8, Element 2, Adverse Actions, ¶ 52.)  But this fails to state an adverse action for her sex discrimination claim.  The discrimination provision of Title VII applies only during the term of employment, see Burlington N., supra, 548 U.S. at 67, and ceased when Plaintiff resigned.

Discrimination and retaliation under Title VII "are not coterminous," id.  The substantive antidiscrimination provisions end at termination of employment while antiretaliation provisions may also cover post-termination actions, id. at 64, 67; see Robinson v. Shell Oil Co., 519 U.S. 337, 346, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997) (holding that the term "employees" in the antiretaliation provision "includes former employees"); Bryant, supra, 2018 WL 6016924, at *3.

Thus, Plaintiff's claims for sex discrimination (in the First Cause of Action) for her repaying the salary overage is not actionable under Title VII because it occurred after Plaintiff was no longer a Boston Scientific employee.  Defendant's Motion to Dismiss (Docket No. 5) this claim is granted.

The Second Cause of Action alleging violation of ADA by this overpayment is discussed below as is the Third Cause of Action for Title VII retaliation.

5.  Plausibility and Droz

Plaintiff cites to the Western District of Washington decision in Droz for her argument that her Complaint alleged plausible claims like allegations in Droz (Docket No. 14, Pl. Supp'al Memo.).  First, there is no finding in that case that the Complaint in Droz was plausible.  It is not clear from the cited decision in Droz, supra, 2020 WL 5203585, that Lindsay Droz in fact had alleged a plausible claim.  Plaintiff has not

provided the pleading in <u>Droz</u> to compare with her Complaint to judge whether either litigant plausibly asserted their respective claims.  All that Corcoran provided was the Western District of Washington's decision which summarized Droz' claim, <u>id.</u> at *1, in deciding a discovery dispute.  That decision did not mention a Motion to Dismiss, <u>id.</u>

Although both cases allege sex discrimination against the same Defendant, the cases are distinct.  Furthermore, a comparison of the two cases on the present record does not automatically establish that Corcoran plausibly alleged her claims against Defendant.  This Court agrees with Defendant (<u>see generally</u> Docket No. 16, Def. Memo.) that <u>Droz</u> has no connection with this case (save the superficial similarity of the plaintiffs and the common Defendant) and <u>Droz</u> adds little to her case or establish its plausibility. This Court's finding that Plaintiff plausibly alleges a Title VII claim thus is not based upon the allegations in <u>Droz</u>.

### 6.  Conclusion, Title VII Claims

Plaintiff's timely sex discrimination claims from 2019 (including her reassignment to a less profitable sales territory) state a plausible Title VII cause of action.  Her claim, however, for repayment of excess salary while she was on leave is not covered by Title VII since the antidiscrimination provisions apply only during her tenure with Defendant and not afterward.

Therefore, Defendant's Motion to Dismiss (Docket No. 5) Plaintiff's timely Title VII claims is granted in part (for her repayment claim), denied in part (for her reassignment claim).

This Court next considers the Second Cause of Action.

E.  ADA

    1.  Applicable Standards

An ADA claim requires proof that Plaintiff suffered an adverse employment action because of her disability or perceived disability (Docket No. 5, Def. Memo. at 13, citing Caskey v. County of Ontario, 560 F. App'x 57, 58 (2d Cir. 2014) (summary Order)). Plaintiff also needs to allege a causal connection between the alleged adverse action and the protected activity, Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002).

    2.  Parties' Contentions

Defendant argues that Plaintiff's Second Cause of Action allegation of suffering stress induced by Defendant did not sufficiently allege an ADA claim (Docket No. 5, Def. Memo. at 13; but cf. Docket No. 1, Compl., ¶ 10, Second Cause of Action, Element 1, Protected Classes and Activity, ¶ 24).  It claims that Plaintiff did not allege that she suffered from a qualifying disability or that her disability motivated Defendant's action (Docket No. 5, Def. Memo. at 13, 23).

Plaintiff did not respond (but see Docket No. 13, Def. Reply Memo. at 7). Defendant replies that Plaintiff did not argue the sufficiency of her allegations (id.).

    3.  Analysis

Plaintiff makes a conclusory allegation of suffering from a disability, a stress-induced disability from her employment (Docket No. 1, Compl. ¶ 10, Second Cause of Action, Element 1, ¶¶ 24-25).  As Defendant observes (Docket No. 5, Def. Memo. at 13), Plaintiff did not allege that her purported disability motivated Defendant's actions.  She fails to allege that she suffered an adverse employment action because of her disability (cf. Docket No. 1, Compl. Second Cause of Action, Element 2, ¶¶ 26-33), see Giordano

v. City of N.Y., 274 F.3d 740, 747 (2d Cir. 2001).  The only allegation possibly tying the reassignment to her disability was her temporal contention that she was reassigned after she took medical leave (id ¶ 32), but she made no causal link between her disability and her assignment.  Plaintiff's failure to object to this part of the Motion to Dismiss (but cf. Docket No. 13, Def. Reply Memo. at 7, 8-9) leads to speculation as to what she intended to allege in stating an ADA claim.  Plaintiff therefore fails to state this claim.

Her contention that she had to repay Defendant after her termination (Docket No. 1, Compl., Second Cause of Action ¶ 33) also fails to allege an adverse action because she fails to state any causal connection between that repayment and her disability.

Defendant's Motion to Dismiss (Docket No. 5) the Second Cause of Action for failure to state an ADA discrimination claim is granted.

> F.  Retaliation under Title VII and ADA

> 1.  Retaliation Standards

As once observed by this Court

> "'Although a plaintiff need not establish a prima facie case of retaliation to survive a motion to dismiss, courts consider the elements of the prima facie case in determining whether there is sufficient factual matter in the complaint, accepted as true, to allow for a reasonable inference that the defendant is liable for the misconduct alleged.' Ghadersohi v. Roswell Park Inst., No. 10–CV–143S, 2011 WL 4572539, at *3 (W.D.N.Y. Sept. 30, 2011) (citing Iqbal, 129 S.Ct. at 1949 & Doverspike v. Int'l Ordinance Techs., 817 F.Supp.2d 141, 148 (W.D.N.Y.2010)).

Lehman v. Bergmann Assocs., Inc., 11 F. Supp.3d 408, 414 (W.D.N.Y. 2014) (Skretny, C.J.).

To establish a prima facie case for a Title VII retaliation, a plaintiff must show "(1) that she participated in a protected activity, (2) that she suffered an adverse

employment action, and (3) that there was a causal connection between her engaging in the protected activity and the adverse employment action," <u>Gorzynski v. JetBlue Airways Corp.</u>, 596 F.3d 93, 110 (2d Cir. 2010); <u>Rasmy v. Marriott Int'l, Inc.</u>, 952 F.3d 379, 391 & n.55 (2d Cir. 2020).

Similarly, a <u>prima facie</u> case of retaliation under the ADA has the same elements: participation in a protected activity; defendant knew of the protected activity; an adverse employment action; and a causal connection between the protected activity and the adverse employment action, <u>Treglia</u>, <u>supra</u>, 313 F.3d at 719.   Plaintiff must show "a reasonable employee would have found the challenged action materially adverse," <u>Burlington N.</u>, <u>supra</u>, 548 U.S. at 68.

### 2.  Parties' Contention

Defendant argues that Plaintiff made a conclusory allegation of retaliation without describing any protected activity and failing to allege (for example) when or to whom she complained (Docket No. 5, Def. Memo. at 16, citing <u>Drumm v. SUNY Geneseo Coll.</u>, 794 F. Supp.2d 423, 425 W.D.N.Y. 2011) (Larimer, J.)).

Plaintiff responds with questions of Defendant's state of mind that should preclude granting a Motion to Dismiss (Docket No. 12, Pl. Memo. at 8-15).  Beyond advocating for her day in court (<u>id.</u> at 15), Plaintiff has not argued how she alleges retaliation.  In its Reply, Defendant states Plaintiff did not address its arguments thus abandoning her claims (Docket No. 13, Def. Reply Memo. at 9), <u>see</u> <u>Baez v. City of Rochester</u>, No. 13CV6625, 2016 WL 3253896, at *3 (W.D.N.Y. June 9, 2016) (Feldman, Mag. J.). Defendant concludes that the Motion to Dismiss should be with prejudice and without leave to amend (<u>id.</u> at 9-10).

### 3.  Analysis—Title VII Retaliation

Plaintiff claimed she engaged in a protected activity in complaining of sex discrimination and suffered from the adverse action of reassignment of her sales territory and being compelled to repay overpayment in leave period salary.

Her allegation that the transfer to less lucrative sales territory after she complained of gender discrimination states a retaliation claim.  She alleges the causal connection between her complaints and her reassignment.  Defendant almost concedes that Plaintiff alleges retaliation claim (cf. Docket No. 5, Def. Memo. at 10).  Thus, Defendant's Motion to Dismiss (Docket No. 5) Plaintiff's surviving Title VII retaliation claim is denied.

Plaintiff, however, had not alleged a causal connection between the repayment of the excessive salary after her resignation and any protected activity to state a retaliation claim under Title VII.  She did not allege that this repayment was due to her sex or arose from her discrimination complains.  She does not allege the protected activity associated with her keeping or later repaying the overpayment.  She merely alleges that Defendant demanded Plaintiff remit without stating any reason.

Although post-termination retaliation such as compelled repayment to the employer remains actionable under Title VII, see Burlington N., supra, 548 U.S. at 64, 67; see also Robinson, supra, 519 U.S. at 346 (but cf. Docket No. 5, Def. Memo. at 24), Plaintiff fails to allege any connection between the recoupment of the salary overage and her complaining of sex discrimination to be retaliatory.  Therefore, Defendant's Motion (Docket No. 5) to dismiss this part of the Third Cause of Action is granted.

### 4. ADA Retaliation

While Plaintiff may have alleged a protected activity from her claimed disability, she did not allege that Defendant knew of her disability or acted in retaliation because of her disability.  She merely alleges that she was on medical leave (Docket No. 1, Compl., Second Cause of Action ¶ 25, Third Cause of Action ¶ 41), with the implicit presumption that Defendant knew the reason for that leave.

Plaintiff also does not allege an adverse employment action from her disability. First, she alleges that she engaged in protected activity by taking medical leave (id. ¶ 42). She does not claim that Defendant retaliated for her taking that leave or hindered her in claiming that leave.  While alleging the change in sales territory, Plaintiff does not connect the change to her disability; instead, she attributed the change to her complaints about gender discrimination (Docket No. 1, Compl., Third Cause of Action ¶ 57).  She does not allege that she complained of disability discrimination.  Her only disability allegation here is that Defendant transferred her after she took medical leave, resulting in reduced revenue (id. ¶ 51).  There is no causal connection between her disability (or the protected activity of taking medical leave to address the disability) and an adverse employment action (reassignment of territory or the request to repay Defendant).

As for repayment, the Complaint still fails to allege the reason for Defendant's demand or contend that it was due to disability discrimination or Plaintiff's unalleged ADA complaints.  Again, the Complaint does not allege any connection between her disability and Defendant's repayment demand.  This is not an adverse action.

Thus, Defendant's Motion (Docket No. 5) to dismiss the Third Cause of Action alleging retaliation is granted.

G.  Equal Pay Act

1.  Equal Pay Act Standards

The Equal Pay Act provides that "[n]o employee ... shall discriminate ... between employees on the basis of sex," 29 U.S.C. § 206(d)(1).  To allege the violation the Equal Pay Act, Plaintiff must show that the Defendant employer paid different wages to employees of the opposite sex; the employees performed equal work on jobs requiring equal skill, effort, and responsibility; and the jobs were performed under similar working conditions, Belfi v. Prendergast, 191 F.3d 129, 135 (2d Cir. 1999); E.E.O.C. v. Port Auth. of N.Y. and N.J., 768 F.3d 247, 254-55 (2d Cir. 2014) (applying plausibility standards after Iqbal); see Corning Glass Works v. Brennan, 417 U.S. 188, 195, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974); 29 U.S.C. § 206(d)(1).  Jobs that are merely comparable are insufficient to state an Equal Pay Act claim, Tomka v. Seiler Corp., 66 F.3d 1295, 1310 (2d Cir. 1995), abrogated on other grounds by Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); Lambert v. Genesee Hosp., 10 F.3d 46, 56 (2d Cir. 1993), cert. denied, 511 U.S. 1052 (1994).

2.  Parties' Contention

Defendant argues Plaintiff made only conclusory assertions without factual support that she was paid less than male colleagues for performing similar work (Docket No. 5, Def. Memo. at 20), see Hughes, supra, 37 F. Supp.3d at 645.

Aside from arguments that her Equal Pay claims were timely under the Lilly Ledbetter Act (Docket No. 12, Pl. Memo. at 1) or her generic contentions of pleading plausibility (id. at 2-7), Plaintiff does not explicitly address her Equal Pay claims.

### 3.   Analysis

As held above, what remains is Plaintiff's timely Equal Pay claims for paychecks issued from May 21, 2018, through August 2019 (when she resigned).

Plaintiff first alleges a difference in pay from her former territory to her reassigned area and the pay of her replacement male colleague in her former territory.  She does not allege sales revenues or salaries of other employees and differentiate them by their gender.

Plaintiff does not allege that she performed the same work as male colleagues (cf. Docket No. 1, Compl., Fourth Cause of Action), although this is implied from her comparison of the numbers of male and female business partners and that her male successor in her former territory received greater compensation than she did.

There is no contention that her skills, effort, or responsibility differed from male employees.  The only difference in responsibility is the size of the assigned market.  There is no allegation about the working condition in these territories.  The sole descriptor for these territories is their annual sales revenues.

The only difference is in the wages paid due to the region assigned and that difference is tied to the productivity of a territory.  The only analysis for assignment alleged is Plaintiff's removal from her former territory to the less profitable one and assignment of a male replacement to her former area.  She makes only conclusory allegations that this reassignment was due to her sex.  This is not sufficient to state a claim under the Equal Pay Act, Suzuki v. State Univ. of N.Y. College of Old Westbury, No. 08CV4569, 2013 WL 2898135, at *4 (E.D.N.Y. June 13, 2013); Lehman, supra, 11 F. Supp.3d at 420.  Courts have dismissed Equal Pay Act claims "'where a plaintiff failed to allege how his or her

position and the comparison position were substantially similar,'" <u>Lehman</u>, <u>supra</u>, 11 F. Supp.3d at 420 (quoting <u>Suzuki</u>, <u>supra</u>, 2013 WL 2898135, at *4).

    Defendant's Motion to Dismiss (Docket No. 5) the Fourth Cause of Action is granted.

## IV.   Conclusion

    Defendant's Motion to Dismiss (<u>id.</u>) is converted into a Motion for Partial Summary Judgment on the question of limitations for Plaintiff's claims.  Therefore, Plaintiff's claims before 300 days of the filing of her EEOC charge on November 1, 2019, for the Title VII, ADA, and retaliation claims (or for her Equal Pay claims before May 21, 2018) are time barred by the respective statutes of limitation.  Defendant's converted Motion (<u>id.</u>) dismissing these untimely claims is granted.

    As for the subsequent Title VII claims, Plaintiff states a plausible claim for sex discrimination for her reassignment on or after January 2019 as well as retaliation claims due to her reassignment following her discrimination complaint.  Therefore, Defendant's Motion to Dismiss (<u>id.</u>) the First Cause of Action is denied and its Motion to Dismiss the Third Cause of Action alleging Title VII retaliation is denied as well.

    As for her timely ADA claims for discrimination and retaliation in the Second and Third Causes of Action, Plaintiff fails to allege an adverse action relative to her claimed disability or a connection between a disability and her alleged actions of reassigned sales territory and compelled repayment of Defendant.  Its Motion to Dismiss (<u>id.</u>) the Second Cause of Action for ADA discrimination and the portion of the Third Cause of Action allege retaliation under the ADA are granted, dismissing these claims.

Plaintiff also fails to state a claim for her timely Equal Pay Act claims in the Fourth Cause of Action.  Plaintiff has not alleged the elements under that Act, only stating how she was reassigned without further comparison of revenues or salaries of other sales partners and representatives.  Defendant's Motion to Dismiss (id.) this claim is granted.

Since the remaining claims under Title VII (discrimination and retaliation) are readily discernable from the Complaint without amendment, Defendant shall answer these remaining claims in the Complaint; Defendant thus has fourteen (14) days from entry of this Decision and Order to file its Answer to the surviving claims.  This case will be referred to a Magistrate Judge for pretrial proceedings.

## V.    Orders

IT HEREBY IS ORDERED, that Defendant's Motion to Dismiss (Docket No. 5) is CONVERTED to a Motion for Partial Summary Judgment on the issue of the limitations defense for Plaintiff's claims,

FURTHER, as converted, Defendant's Motion for Partial Summary Judgment (id.) is GRANTED as to untimely claims, DENIED for other (potentially timely) claims which have material issues of fact,

FURTHER, considering the remaining Motion (id.) as a Motion to Dismiss, Defendant's Motion is GRANTED IN PART and DENIED IN PART as indicated above,

FURTHER, Defendant shall answer the surviving claims within fourteen (14) days of entry of this Decision and Order.

SO ORDERED.

Dated:        February 16, 2022
              Buffalo, New York

s/William M. Skretny
WILLIAM M. SKRETNY
United States District Judge